IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BOB GUDDEE, a natural person,<br><br>Plaintiff,<br><br>vs.<br><br>ABUDANZA, INC., a Hawaii corporation; WADE W. WHITMAN, a natural person; PAUL BOTTS, a natural person; and DOES 1-50,<br><br>Defendants. | CIVIL NO. 06-00664 SOM/KSC<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT

I. INTRODUCTION.

On September 20, 2006, Plaintiff Bob Guddee ("Guddee") filed the Complaint against Defendants Abudanza, Inc. ("Abudanza"), Wade W. Whitman ("Whitman"), and Paul Botts ("Botts") (collectively, "Defendants") in the district court for the Southern District of California. In the Complaint, Guddee asserts the following claims under California statutory and common law: (1) rescission of contract (Count 1); (2) misappropriation of trade secrets (Count 2); (3) intentional interference with prospective economic advantage (Count 3); and (4) unfair competition (Count 4). On December 14, 2006, the district court for the Southern District of California granted the parties' joint motion to transfer venue to this court.

On January 19, 2007, Defendants filed a motion to dismiss the Complaint. Defendants first argue that dismissal is warranted because Guddee has not alleged that the amount in controversy exceeds the jurisdictional threshold of $75,000. Alternatively, Defendants contend that the Complaint should be dismissed for failure to state a claim, as the Complaint asserts violations of California law, whereas the contract at issue in this case provides that it shall "be governed by, and construed and enforced in accordance with the laws of the State of Hawaii." In response, Guddee argues that the Complaint "plainly alleges an amount in controversy exceeding $75,000.00." Guddee also argues that Count 2 for misappropriation of trade secrets should not be dismissed because it alleges violations of California's trade secret law, which, like Hawaii trade secret law, is based on the Uniform Trade Secrets Act. Guddee concedes that the remaining claims are based on California law, but asks for leave to amend those claims to assert violations of Hawaii law instead. Because Guddee fails to meet his burden to establish subject matter jurisdiction, the court dismisses the Complaint, but allows Guddee to file an amended Complaint.

II. LEGAL STANDARD.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer subject

matter jurisdiction on the court, or attack the existence of subject matter jurisdiction in fact. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. Thornhill Publ'g Co., 594 F.2d at 733. Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. In re Syntex Corp. Sec. Lit., 95 F.3d 922, 926 (9th Cir. 1996). A plaintiff has the burden of proving that jurisdiction exists. Thornhill Publ'g Co., 594 F.2d at 733.

III. BACKGROUND.

Whitman is the president of Abudanza, which is in the business of making and selling pizza and had been searching for "a person who could design and build a working vending machine." Complaint ¶ 9; Declaration of Wade W. Whitman (3/1/2007)

("Whitman Decl'n") ¶ 1. Abudanza eventually met with Guddee, an inventor, and they allegedly entered into an oral agreement whereby Guddee agreed to "design and build a machine in time for the NAMA (National Automatic Merchandising Assn.) show," and Abudanza agreed to give Guddee "exclusive territorial rights to the northern part of the County of San Diego" for Guddee to place up to fifty pizza machines there. Complaint ¶ 9. Guddee says that Abudanza agreed to draft a document memorializing their oral agreement. Complaint ¶ 9.

According to Guddee, he "began work on the machine" even though Abudanza did not draft a written agreement. Complaint ¶ 10. Guddee says he finished the prototype "in 59 days so as to meet the deadline upon which Abudanza insisted." Complaint ¶ 10. Guddee alleges that Abudanza then asked Guddee to deliver the prototype machine to the NAMA show, and Guddee agreed, "subject to Abudanza's agreement not to disclose [his] trade secrets." Complaint ¶ 10. Guddee says Abudanza agreed to Guddee's condition not to disclose his trade secrets. Complaint ¶ 10.

According to Guddee, after the NAMA show, he offered "to sell to Abudanza all rights and inventions for $240,000 and to 'cash out' the prototype machine." Complaint ¶ 11. Guddee says that "Abudanza's board . . . agreed to pay [Guddee] $240,000, [to] allow [him] to place fifty (50) machines of his

own in San Diego, and [to] contract with [him] to build production machines." Complaint ¶ 11.

Guddee says that he "immediately began work on a Rev A machine" and that he "invited several potential vendors to look at this machine." Complaint ¶ 12. According to Guddee, two of the vendors were "Mr. Hip and Ridgeline Engineering," who, Guddee says, "began secretly trying to persuade Abudanza to allow them to take over the whole project, claiming that they were better suited and able to produce the machines at a lower cost than Mr. Guddee could." Complaint ¶ 12.

Guddee says that, because of the alleged conspiracy between Abudanza, Mr. Hip, and Ridgeline Engineering, he became "determined to remove himself from further association" with them and "offered to take a cash buy-out (at $75,000.00) from Abudanza in exchange for an assignment of the machine and appurtenant rights and inventions." Complaint ¶ 13. Abudanza allegedly agreed, and the parties entered into the Agreement on November 17, 2004. Complaint ¶ 13. Pursuant to the Agreement, Guddee assigned to Abudanza "any and all right, title, and interest in and to any Intellectual Property Rights, including all registrations or applications for registration, associated with the [pizza machines]." Ex. A (attached to Complaint) at 1. In return, Abudanza agreed to pay Guddee $75,000.00 as follows: "an initial payment of Ten Thousand Dollars ($10,000) shall be payable on [November 17, 2004] with the balance of Sixty-Five

Thousand Dollars ($65,000) to be paid by January 31, 2005." Ex. A (attached to Complaint) at 2. The Agreement also stated, "In the event Abudanza is unable to or fails to make payment to [Guddee], [Whitman and Botts] hereby guarantee payment of the above sum when due and shall be personally liable to Guddee for such sum." Ex. A (attached to Complaint) at 2. The Agreement also provided that it "will be governed by, and construed and enforced in accordance with the laws of the State of Hawaii." Ex. A (attached to Complaint) at 4.

According to Whitman, Defendants paid Guddee the down payment of $10,000 on November 12, 2004. Whitman Decl'n ¶ 2. Whitman also says that, notwithstanding the terms of the Agreement, he "reached another agreement with [Guddee] whereby [Guddee] would accept partial payments of the remaining balance owed, along with interest." Id. ¶ 3. Whitman alleges, "Under the payment plan accepted and agreed to by [Guddee], [Guddee] was paid an additional $39,514.00 in principal and interest." Id. ¶ 3. Whitman says he continued to pay Guddee until July 2006. Id. ¶¶ 4-9.

Guddee alleges that, "[s]everal months" after the parties entered into the Agreement, Abudanza asked Guddee "to travel to Hawaii and display the machine at an investors' show." Complaint ¶ 15. Guddee says that he agreed to display the machine and that Abudanza agreed to pay for the machine's

transportation and Guddee’s travel costs plus an additional $2,000.00 for his time. Complaint ¶ 15.

Guddee says that, after he displayed the machine at the investors’ show, he “secured and locked the machine, then placed it back into a wooden crate so that it could be shipped back to him in Escondido by Abudanza.” Complaint ¶ 15. Guddee alleges, “Abudanza then willfully directed the machine not to [Guddee] but instead to Ridgeline--who opened the crate, forcibly broke into the machine after breaking the lock on it, retrieved all data and inventions from inside it (over the span of several days during late September and/or early October 2004), and finally returned the machine to [Guddee] (on October 8, 2004).” Complaint ¶ 15.

Guddee says that “neither Abudanza, Whitman, nor Botts paid [him] $75,000.00, or anything close to it.” Complaint ¶ 16. According to Guddee, “Abudanza (without [his] consent) also began manufacturing and marketing the machine, which it now sells in high volume worldwide at an approximate cost of $8,500.00 per copy via its website.” Complaint ¶ 16. Whitman, however, says that “Abudanza has not manufactured or sold a single pizza vending machine because there is no working machine to sell.” Whitman Decl’n ¶ 10.

IV. ANALYSIS.

Defendants assert that the Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure for lack of jurisdiction. Specifically, Defendants posit that "the Complaint fails to allege that the amount in controversy exceeds the sum or value of $75,000.00, as required by 28 U.S.C. § 1332(a)." Motion at 2. Defendants point to evidence showing that, contrary to Guddee's allegations that Defendants failed to pay him $75,000.00 as required under the Agreement, Defendants made numerous payments under the contract to Guddee. Guddee responds that the court must presume all factual allegations in the Complaint as true, must liberally construe the allegations in the Complaint, and must draw all reasonable inferences in favor of Guddee. Opp. at 4, 10. Under that standard, Guddee says, "Taken together, his assertions of financial loss exceeding $75,000.00 must be deemed true at this point." Opp. at 11. The court agrees with Defendants and dismisses the Complaint for lack of jurisdiction, but allows Guddee to file an amended Complaint.

"Jurisdiction founded on 28 U.S.C. § 1332 requires that the parties be in complete diversity and the amount in controversy exceed $75,000." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." Thornhill Publ'g Co., 594 F.2d at 733. "Where the

jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." Id. When faced with a factual attack on subject matter jurisdiction, the Ninth Circuit says:

> the trial court may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

Id. (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

Defendants factually challenge the court's subject matter jurisdiction by arguing that, contrary to Guddee's allegations, Defendants do not owe him more than $75,000.00. Defendants point to evidence that they made numerous payments to Guddee and that the parties entered into a separate agreement, which modified the amount that Defendants were to pay Guddee under the Agreement. Whitman Decl'n ¶ 3. In response, Guddee refers to Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987) and Kersting v. United States, 818 F. Supp. 297, 300 (D. Haw. 1992), arguing that this court must presume all of his factual allegations as true. Opp. at 4. Although Usher and Kersting properly state the legal standard applicable to motions

to dismiss under Rule 12(b)(6) for failure to state a claim, Defendants seek dismissal for lack of jurisdiction under Rule 12(b)(1).[1] In ruling on a motion under Rule 12(b)(1) that factually attacks the court's subject matter jurisdiction, "[n]o presumptive truthfulness attaches to plaintiff's allegations." See Thornhill Publ'g Co., 594 F.2d at 733. The court therefore rejects Guddee's argument that the court must presume his version of the facts as true.

Nowhere in the Complaint does Guddee specify the amount of damages he seeks to recover. Rather, he generally prays for the following monetary relief: (1) "actual loss" caused by the Defendants' misappropriation, which Guddee says will "be proven at trial," Complaint ¶ 25; (2) the "payment of a reasonable royalty," Complaint ¶ 27; (3) lost profits that Guddee "would have enjoyed from the agreements into which he could and would have entered with third parties for sales and/or leases of the machine but for defendants' misconduct," Complaint ¶¶ 32, 36; (4) exemplary damages, Complaint ¶¶ 28, 33, 38; (5) treble damages, Complaint Prayer for Relief ¶ C; (6) attorneys' fees, Complaint ¶¶ 28; and (7) pre- and post-judgment interest. Complaint Prayer for Relief ¶ H. Guddee also seeks "restitution

---

[1] As noted above, Defendants alternatively seek dismissal under Rule 12(b)(6) for failure to state a claim. However, the court dismisses the Complaint under Rule 12(b)(1) for lack of jurisdiction and does not reach Defendants' alternative argument.

. . . of all consideration which he furnished to defendants pursuant to the Agreement" and an "order requiring Defendants to "disgorge to [Guddee] all sums whereby they have been unjustly enriched." Complaint ¶¶ 9, 26, 37; Complaint Prayer for Relief ¶ D-E.

The only allegations in the Complaint concerning any monetary amount are that: (1) Guddee at one time offered to sell Abudanza rights to his invention for $240,000.00, and "Abudanza's board" originally agreed to pay him that amount, Complaint ¶ 11; (2) Abudanza agreed to pay Guddee $2,000.00 and travel expenses to "display the machine at an investors' show" in Hawaii, Complaint ¶ 15; (3) Abudanza currently sells the machine for approximately $8,500.00 per copy," Complaint ¶ 16; and (4) Defendants ultimately agreed to pay Guddee $75,000.00 under the Agreement. Complaint ¶¶ 13-14.

Regarding the first two allegations, even if Abudanza agreed to pay Guddee $240,000 for rights to his invention and for costs related to showing the machine at the investors' show, Guddee fails to assert anywhere in the Complaint that Abudanza did <u>not</u> pay him those amounts or that he seeks to recover that money from Defendants in this action.

With respect to Guddee's allegation that Abudanza currently sells his machines for approximately $8,500.00 per copy, Defendants present Whitman's declaration, in which he avers

that “Abudanza has not manufactured or sold a single pizza vending machine because there is no working machine to sell.” Whitman Decl’n ¶ 10. Because Guddee does not dispute this fact, the court has no basis for determining the amount of royalties or disgorgement Guddee seeks.

Regarding the $75,000 owed to Guddee under the Agreement, Defendants present evidence that they paid a portion of that amount and that the parties reached a separate agreement that modified the amount owed to Guddee. Guddee does not dispute this evidence, and because that separate agreement is not before the court, the court is unable to determine how much money was owed to Guddee under the final agreement or how much money Guddee is still owed.

The court acknowledges that Guddee seeks “actual loss” caused by Defendants’ misappropriation, “payment of a reasonable royalty,” lost profits, restitution, disgorgement, exemplary and treble damages, pre- and post-judgment interest, and attorneys’ fees. It may well be that Guddee can easily show that these alleged damages will far exceed $75,000, but the present record does not allow the court to determine whether the prayed for amounts exceed $75,000. The evidence before the court indicates, at most, that Defendants paid a portion of the $75,000.00 required under the Agreement and that, in any event, the parties

reached a separate agreement that modified the amount Defendants were to pay Guddee.

Guddee argues that "his civil cover sheet alleged . . . an amount in controversy over $75,000," Opp. at 9, but the court is unable to find that document in the transmitted record. Without more, Guddee fails to meet his burden of establishing that the amount in controversy exceeds $75,000. See Thornhill Publ'g Co., 594 F.2d at 733. The court therefore dismisses the Complaint.

Because the jurisdictional defects in the Complaint may be saved by an amendment, the court grants Guddee leave to amend the Complaint.[2] See Swartz v. KPMG LLP, 476 F.3d 756, 761 (9th Cir. 2007) ("Assuming a substantive or jurisdictional defect in the pleadings, dismissal without leave to amend is proper only if it is clear, upon de novo review, that the complaint could not be saved by any amendment.").

V. CONCLUSION.

The court dismisses the Complaint and grants Guddee leave to file an amended Complaint by April 9, 2007. If Guddee does not amend the Complaint by that date, this action will automatically be dismissed.

---

[2] Although the court does not reach Defendants' argument that the Complaint fails to state a claim under Hawaii law, Guddee is free to assert violations of Hawaii law in the amended Complaint.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 9, 2007.




Susan Oki Mollway
United States District Judge

**Guddee v. Abudanza, et al., Civ. No. 06-00664 SOM/KSC; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT.**