IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BOB GUDDEE, a natural person, )<br><br>        Plaintiff,      )<br><br>   vs.          )<br><br>ABUDANZA, INC., a Hawaii  )<br>corporation; WADE W. WHITMAN, )<br>a natural person; PAUL BOTTS, )<br>a natural person; and DOES  )<br>1-50,            )<br><br>        Defendants.    )<br>_____ ) | CIVIL NO. 06-00664 SOM/KSC<br><br>ORDER DENYING DEFENDANTS'<br>MOTION TO DISMISS OR, IN THE<br>ALTERNATIVE, FOR SUMMARY<br>JUDGMENT |

ORDER DENYING DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

This is a diversity action concerning a vending machine dispensing pizza.  The case has a convoluted procedural history.

On April 9, 2007, Plaintiff Bob Guddee ("Guddee") filed a First Amended Complaint ("FAC") against Defendants Abudanza, Inc. ("Abudanza"), Wade W. Whitman ("Whitman"), Paul Botts ("Botts"), and Does 1-50 (collectively, "Defendants").  In the FAC, Guddee asserts the following claims under Hawaii statutory and common law:  (1) rescission and restitution of an Agreement ("Agreement") of November 17, 2004, which concerned the release of intellectual property rights associated with the pizza vending machine; (2) misappropriation of trade secrets; (3) intentional interference with prospective economic advantage; and (4) unfair competition.

Guddee's complaint seeks damages stemming from:
(1) Defendants' anticipated profits associated with sales of the
pizza vending machine; (2) the value of the rights that Guddee
released to Defendants in the Agreement; and (3) prospective
economic advantage that Guddee allegedly would have realized from
the sale and/or lease of pizza vending machines.  FAC at 2.

On April 26, 2007, Defendants filed the present motion
to dismiss the FAC, or, in the alternative, for summary judgment
("Motion").  In their Motion, Defendants argue that the case
should be dismissed under Rule 12(b)(1) of the Federal Rules of
Civil Procedure because the amount in controversy allegedly fails
to exceed $75,000.  Defendants also contend that the FAC should
be dismissed for failure to state a claim upon which relief can
be granted pursuant to Rule 12(b)(6), arguing that the Agreement
precludes each claim, and that Guddee's claim for intentional
interference with prospective business advantage fails because
the FAC does not allege prospective business relationships with
third parties or Defendants' intent to interfere with these
relationships.  Defendants also seek dismissal pursuant to Rule
12(b)(7) on the ground that Guddee failed to join Five Star
Enterprises ("Five Star")--a party to the Agreement.
Alternatively, Defendants move for summary judgment pursuant to
Rule 56.

2

On June 8, 2007, this court found that there was insufficient information in the record to determine whether the jurisdictional amount had been satisfied.  Order Continuing Hearing on Defendants' Motion to Dismiss and Permitting Additional Discovery on Jurisdictional Issues of June 8, 2007 ("June 8, 2007, Order") at 6.  The hearing was continued to October 15, 2007, to allow for additional discovery restricted to issues concerning this court's jurisdiction.  Id.

Following additional discovery, Defendants filed a Supplemental Memorandum, claiming that Guddee "is unable to prove he has any damages beyond possible damages for breach of contract, which are not enough to satisfy the jurisdiction requirements of 28 U.S.C. § 1332."  Defendants' Supplemental Memorandum in Support of Defendants' Motion to Dismiss of September 17, 2007 ("Supplemental Mem.") at 5.

Guddee responded that the intellectual property rights at issue in the Agreement far exceed the jurisdictional amount in value, and that Defendants had failed to respond meaningfully to the request for production of documents, thus denying Guddee additional evidence concerning the amount in controversy.  Plaintiff's Supplemental Brief Opposing Defendants' Motion of September 27, 2007 ("Supplemental Opp'n") at 8-11.

On October 10, 2007, this court held a telephone conference regarding the discovery dispute and directed the

3

parties to resolve the dispute by agreement or before a Magistrate Judge.  The hearing was continued to December 3, 2007.

After the relevant documents were produced, Guddee filed a second supplemental brief, claiming that the documents demonstrated that Defendants themselves valued the intellectual property rights covered by the Agreement at well above the jurisdictional amount and that projected profits associated with the machine also exceeded the threshold amount.  Guddee alleged that Defendants did not prove to a "legal certainty" that the jurisdictional amount was not met.  Plaintiff's Second Supplemental Brief Opposing Defendants' Motion to Dismiss of November 14, 2007 ("Second Supplemental Opp'n") at 2.  Defendants simply reiterated their request for dismissal.  Defendants' Second Supplemental Reply Memorandum in Support of Defendants' Motion to Dismiss of November 20, 2007 ("Second Supplemental Reply").

On November 30, 2007, this court issued a prehearing inclination in accordance with its usual practice.  The court said it was inclined to deny Defendants' Rule 12(b)(1) Motion. At the hearing on Defendants' Motion, held on December 3, 2007, Defendants withdrew the portion of the Motion seeking dismissal for lack of subject matter jurisdiction.  Based upon Guddee's statement that Five Star was not a legal entity capable of suing,

4

Defendants also withdrew the Rule 12(b)(7) portion of their Motion asserting a failure to join an indispensable party.

Remaining before the court is Defendants' request under Rule 12(b)(6) for dismissal for failure to state a claim, or, in the alternative, for summary judgment.  Because Guddee states claims upon which relief may be granted, and because there are remaining issues of material fact, the remainder of Defendants' Motion is denied.

II.      <u>LEGAL STANDARDS.</u>

The court reviews the Motion under the Federal Rules of Civil Procedure as amended effective December 1, 2007.  As the amendments to the rules in issue here were stylistic only, the court relies on authorities construing the previous version of the applicable rules.

A.   <u>Rule 12(b)(6) Motion to Dismiss.</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a complaint when it fails "to state a claim upon which relief can be granted."  Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir.), <u>as amended by</u> 275 F.3d 1188 (9th Cir. 2001); <u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1479 (9th Cir. 1996).

On a Rule 12(b)(6) motion, all allegations of material fact are taken as true and construed in the light most favorable

to the nonmoving party.  Fed'n of African Am. Contractors v. City
of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  Conclusory
allegations of law, unwarranted deductions of fact, and
unreasonable inferences are insufficient to defeat a motion to
dismiss.  Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95
F.3d 922, 926 (9th Cir. 1996).  Dismissal under Rule 12(b)(6) may
be based on either: (1) lack of a cognizable legal theory, or (2)
insufficient facts under a cognizable legal theory.  Balistreri
v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)
(citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530,
533-34 (9th Cir. 1984)).

When matters outside of the pleadings are considered by
the court, the motion to dismiss may be converted to a motion for
summary judgment.  Fed. R. Civ. P. 12(d); Jacobson v. AEG Capital
Corp., 50 F.3d 1493, 1496 (9th Cir. 1995).  "All parties must be
given a reasonable opportunity to present all the material that
is pertinent to the motion."  Fed. R. Civ. P. 12(d).

B.   Motion for Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure
provides that summary judgment shall be granted when "the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal.

Dep't of Corr., 383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment must be granted against a party that fails to demonstrate facts to establish an essential element at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."  Porter, 383 F.3d at 1024 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003).

III.      FACTUAL BACKGROUND.

Whitman is the president of Abudanza, which is in the business of making and selling pizza and had been searching for "a person who could design and build a working vending machine." FAC ¶ 10; Declaration of Wade W. Whitman (3/1/2007) ("Whitman Decl'n") ¶ 1.  Abudanza and Guddee, an inventor, allegedly entered into an oral agreement under which Guddee agreed to "design and build a machine in time for the NAMA (National Automatic Merchandising Assn.) show," and Abudanza agreed to give Guddee "exclusive territorial rights to the northern part of the County of San Diego" for Guddee to place up to fifty pizza machines there.  FAC ¶ 10.  Guddee says that Abudanza agreed to draft a document memorializing their oral agreement.  Id.

According to Guddee, he "began work on the machine" even though Abudanza had not drafted a written agreement.  Id. ¶ 11.  Guddee says he finished the prototype "in 59 days so as to meet the deadline upon which Abudanza insisted."  Id.  Guddee alleges that Abudanza then asked Guddee to deliver the prototype machine to the NAMA show.  Guddee agreed, "subject to Abudanza's agreement not to disclose [his] trade secrets," and Abudanza agreed.  Id.

Guddee alleges that, after the NAMA show, he offered "to sell to Abudanza all rights and inventions for $240,000.00 and to 'cash out' the prototype machine."  Id. ¶ 12.  Guddee

8

asserts that "Abudanza's board . . . agreed to pay [Guddee] $240,000.00, [to] allow [him] to place fifty (50) machines of his own in San Diego, and [to] contract with [him] to build production machines." Id.

After the board's alleged acceptance of Guddee's offer, Guddee claims he "immediately began work on a Rev A machine (pre-production)" and that he "invited several potential vendors to look at this machine." Id. According to Guddee, two of the potential vendors were a Mr. Hip and Ridgeline Engineering, who, Guddee alleges, "began secretly trying to persuade Abudanza to allow them to take over the whole project, claiming that they were better suited and able to produce the machines at a lower cost than Mr. Guddee could." Id.

Guddee says that, because of the alleged conspiracy between Abudanza, Hip, and Ridgeline Engineering, he became "determined to remove himself from further association" with Abudanza and "offered to take a cash buy-out (at $75,000.00) from Abudanza in exchange for an assignment of the machine and appurtenant rights and inventions." Id. ¶ 14. Abudanza allegedly agreed and executed the November 17, 2004, Agreement, which is at the heart of Guddee's rescission claim. Id.

Pursuant to the Agreement, Guddee assigned to Abudanza "any and all right, title, and interest in and to any Intellectual Property Rights, including all registrations or

applications for registration, associated with the [pizza vending machines]." Ex. A (attached to FAC) at 1.  In return, Abudanza agreed to pay Guddee $75,000.00 as follows:  "an initial payment of Ten Thousand Dollars ($10,000) shall be payable on [November 17, 2004] with the balance of Sixty-Five Thousand Dollars ($65,000) to be paid by January 31, 2005."  Id. at 2.  The Agreement also stated, "In the event Abudanza is unable to or fails to make payment to [Guddee], [Whitman and Botts] hereby guarantee payment of the above sum when due and shall be personally liable to Guddee for such sum."  Id.  The Agreement also provided that it "will be governed by, and construed and enforced in accordance with the laws of the State of Hawaii."  Id. at 4.

According to Whitman, Defendants paid Guddee the down payment of $10,000 on November 12, 2004.  Whitman Decl'n ¶ 2.  Whitman also claims that, notwithstanding the terms of the Agreement, he "reached another agreement with [Guddee] whereby [Guddee] would accept partial payments of the remaining balance owed, along with interest."  Id. ¶ 3.  Whitman alleges, "Under the payment plan accepted and agreed to by [Guddee], [Guddee] was paid an additional $39,514.00 in principal and interest."  Id.  Whitman says he continued to pay Guddee until July 2006.  Id. ¶¶ 4-9.

10

Guddee alleges that, several months after the parties entered into the Agreement, Abudanza asked Guddee "to travel to Hawai'i and display the machine at an investors' show." FAC ¶ 16. Guddee claims that he agreed to display the machine and that Abudanza agreed to pay for the machine's transportation and Guddee's travel costs, plus an additional $2,000 for his time. Id.

After Guddee displayed the machine at the investors' show, he allegedly "secured and locked the machine, then placed it back into a wooden crate so that it could be shipped back to him in Escondido by Abudanza." Id. Guddee alleges, "Abudanza then willfully directed the machine not to [Guddee] but instead to Ridgeline--who opened the crate, forcibly broke into the machine after breaking the lock on it, retrieved all data and inventions from inside it (over the span of several days during late September and/or early October 2004), and finally returned the machine to [Guddee] (on October 8, 2004)." Id.

Guddee claims that "neither Abudanza, Whitman, nor Botts paid [him] $75,000.00, or anything close to it." Id. ¶ 17. According to Guddee, "Abudanza (without [his] consent) also began manufacturing and marketing the machine, which it now sells in high volume worldwide at an approximate cost of $8,500.00 per copy via its website." Id. Whitman, however, says that "Abudanza has not manufactured or sold a single pizza vending

machine because there is no working machine to sell."  Whitman Decl'n ¶ 10.

IV.      ANALYSIS.

        Defendants initially moved for a 12(b)(1) dismissal based on lack of subject matter jurisdiction.  Defendants also raised a 12(b)(7) objection for failure to join Five Star, an alleged indispensable party pursuant to Rule 19.  Defendants have since withdrawn these arguments.  This court, having examined the jurisdictional issue, concludes that it has diversity jurisdiction.

        Remaining before the court is Defendants' 12(b)(6) motion to dismiss for failure to state a claim, or, in the alternative, for summary judgment, based primarily on the following grounds: (1) the Agreement precludes each claim, and (2) Guddee's claim for intentional interference with prospective business advantage fails because the FAC does not allege facts sufficient to state a claim for relief.

        The court determines that the Agreement does not bar each claim, and that Guddee has alleged facts sufficient to state a claim for intentional interference with prospective economic advantage.  Defendants' Motion is therefore denied.

> A.   The Motion Is Denied With Respect to the First
>      Claim for Relief.
>
> 1.   The Court Disregards the July 5, 2003,
>      "Assignment Agreement."

In his First Claim for Relief, Guddee seeks rescission
of the Agreement.  Defendants submit a different agreement, dated
July 5, 2003, along with their Supplemental Memorandum,
challenging Guddee's entitlement to any intellectual property
rights associated with the machine.  See Supplemental Mem. at 5 &
Ex. C.  That memorandum was, by court order, to have been limited
to the jurisdictional issue, but Defendants appear to now be
relying on the 2003 agreement in connection with their request
for summary judgment.  See Second Supplemental Reply at 5
("Because the Plaintiff has not and cannot show that he obtained
any rights to the machine between the time he entered into the
non-compete agreement and the time he entered into the Settlement
Agreement, Plaintiff's claim for rescission must fail as a matter
of law because there are no rights that would revert back to
him.").

To the extent Defendants are moving for summary
judgment based on this 2003 agreement, the court disregards the
document.  Not only did the submission of the document violate
this court's order of June 8, 2007, the 2003 agreement itself
provides for an arbitrator, not a court, to construe it and
resolve disputes over it.  Defendants raised the 2003 agreement

again in a final prehearing filing to which Guddee could not

reply in writing.  As the court sees no reason defense counsel

could not have obtained the 2003 agreement from Defendants in

time to include it in the moving papers, the court, in fairness

to Guddee, disregards the 2003 agreement for purposes of the

present motion.

           2.    The November 17, 2004, Agreement Does Not
                Preclude the Present Action.

      Defendants urge the court to treat the November 17,

2004, Agreement as a settlement agreement that should be

enforced, not rescinded.  The Hawaii Supreme Court has defined a

settlement agreement as "an agreement to terminate, by means of

mutual concessions, a claim which is disputed in good faith or

unliquidated.  It is an amicable method of settling or resolving

bona fide differences or uncertainties and is designed to prevent

or put an end to litigation." Amantiad v. Odum, 90 Haw. 152,

161, 977 P.2d 160, 169 (Haw. 1999) (quoting 15A Am. Jur. 2d

Compromise and Settlement § 1 (1976)) (internal quotation marks

omitted); see also Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De

Nemours & Co., 2007 WL 4127030 at *7 (Haw. Nov. 21, 2007).

      Courts encourage the enforcement of settlement

agreements, and "[a]s a general rule, a properly executed

settlement precludes future litigation for parties." Amantiad,

90 Haw. at 161, 977 P.2d at 169.  But a settlement agreement

is "simply a species of contract," Wong v. Cayetano, 111 Haw.

14

462, 481, 143 P.3d 1, 20 (Haw. 2006), and is governed by general principles of contract law, State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Haw. 315, 323-34, 978 P.2d 753, 761-62 (Haw. 1999).

Accordingly, the same grounds that would justify rescission of other contracts apply to settlement agreements. Assocs. Fin. Servs. Co. of Haw. v. Mijo, 87 Haw. 19, 28-29, 950 P.2d 1219, 1228-29 (Haw. 1998); see also In re Doe, 90 Haw. 200, 211, 978 P.2d 166, 177 (Haw. Ct. App. 1999) ("A settlement agreement may be subject to rescission . . ."). Rescission is a remedy available to a nonbreaching party when there has been a material breach by the other party. Bishop Trust Co., Ltd., v. Kamokila Dev. Corp., 57 Haw. 330, 334-34, 555 P.2d 1193, 1196 (Haw. 1976); see also Aickin v. Ocean View Invs. Co., 84 Haw. 447, 460, 935 P.2d 992, 1005 (Haw. 1997) (quoting Golf Carts, Inc. v. Mid-Pac. Country Club, 53 Haw. 357, 359, 493 P.2d 1338, 1339 (Haw. 1972)).

When there has been a breach of a contract, the nonbreaching party may elect its remedy, choosing from among "damages, reformation, and rescission." Lemle v. Breeden, 51 Haw. 426, 436, 462 P.2d 470, 475 (Haw. 1969); see also Hi Kai Inv., Ltd. v. Aloha Futons Beds & Waterbeds, Inc., 84 Haw. 75, 80, 929 P.2d 88, 93 (Haw. 1996) (noting that a breach of a lease allows the nonbreaching party a choice of remedies, which

15

includes (1) suing for damages, (2) enforcement of the lease, or (3) cancellation of the lease). Moreover, the nonbreaching party need not elect its remedy until the finder of fact has made its findings. See Cieri v. Leticia Query Realty, Inc., 80 Haw. 54, 46, 905 P.2d 29, 72 (Haw. 1995) (asserting that a plaintiff cannot be forced to choose between remedies during the course of a trial).

Defendants contend that, in the Agreement, Guddee "released Defendants from any liability regarding the vending machine and assigned any rights he had in the machine to Defendants." Motion at 9. Specifically, Defendants argue that "the law favors the enforcement of settlement agreements," and that it "is undisputed that a Settlement Agreement among the parties exist[s]." Id. At the hearing, Defendants suggested that Mijo, 87 Haw. 19, 950 P.2d 1219, stands for the proposition that, in the absence of bad faith or fraud, neither party can rescind a settlement agreement. Because Guddee seeks rescission based only on a failure of consideration, the only available remedy, Defendants say, is damages, not rescission.

Besides responding that a settlement agreement is subject to the same standards governing rescission as any other form of agreement, see Opp'n at 8-9, Guddee challenges whether the November 17, 2004, Agreement, is, in fact, a "settlement agreement." See id. at 8 n.2 ("Defendants unilaterally have

16

chosen the label 'Settlement Agreement' to describe the Agreement darted November 17, 2004 (which is entitled, simply, 'Agreement').  Mr. Guddee uses this latter term, because it is the actual title of the document.").

Even assuming the Agreement is a settlement agreement, it does not bar Guddee's claims.  General principles governing contract law apply to settlement agreements, and the Agreement may thus be rescinded if Defendants materially breached it.  At the hearing, Defendants themselves did not dispute that a contract breach confers upon the nonbreaching party an election of remedies, including rescission.

Mijo is inapposite and does not preclude Guddee's rescission claim.  In Mijo, the parties had entered into a settlement agreement under the trial court's supervision, and the plaintiffs ultimately refused to sign the settlement agreement, asserting, among other things, that they had been coerced into settling by the trial court.  See id. at 23-24, 1223-24.  The Hawaii Supreme Court enforced the settlement agreement, determining that there had been no bad faith or fraud and holding that, "in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it."  Id. at 29, 1229.  The plaintiffs did not allege that the other side had breached the settlement agreement, and the Hawaii Supreme Court was not holding in Mijo

17

that a nonbreaching party faced with the other side's material breach lacks a rescission remedy in the settlement context.

In the context of accord and satisfaction contracts, which share much with settlement agreements, a nonbreaching party has the option of enforcing either the accord and satisfaction contract or the original contract when there has been a breach by the other party.  An accord is a contract in which a party accepts a "stated performance in satisfaction of the obligor's existing duty."  <u>Azer v. Myers</u>, 8 Haw. App. 86, 108, 793 P.2d 1189, 1205 (Haw. App. 1990) (quoting Restatement (Second) of Contracts § 281 (1979)), <u>rev'd in part on other grounds</u>, 71 Haw. 506, 795 P.2d 853 (Haw. 1990).  When there has been breach of an accord, the nonbreaching party "may enforce either the original contract or the new contract."  <u>Azer</u>, 8 Haw. App. at 107 n.20, 793 P.2d at 1204 n.20.  Analogously, if Defendants allegedly breached the Agreement, Guddee can elect either to return to the parties' preexisting obligations or to enforce the Agreement.  Guddee has chosen to seek the former, as is his right.

The court denies Defendants' motion to dismiss or for summary judgment to the extent it is based on the argument that the Agreement precludes Guddee's claims.

> 3.   An Alleged Lack of Remedy Does Not Bar
>       <u>Guddee's Rescission Claim.</u>

Defendants also argue that rescission is barred because there is a "lack of remedy."  Motion at 12.  Defendants

allege that a claim for rescission would require them to return
the consideration furnished to Guddee, which includes intangible
items such as "trade secrets, technology, and know-how." Id. at
11 (internal quotation marks omitted). Defendants allege that,
because "the consideration that Plaintiff allegedly provided
cannot be physically returned to the Plaintiff," Guddee's claim
for rescission fails for lack of remedy. Id. at 12. At the
hearing, Defendants clarified that Guddee has no remedy because,
even if the Agreement were rescinded, Guddee has not demonstrated
that he has any rights to the machine. Specifically, Defendants
point to the July 5, 2003, agreement as demonstrating that Guddee
never had any rights to the machine and, thus, that rescission
would not return any intellectual property rights to Guddee.[1]

Guddee, however, is not requesting that Defendants
"unring the bell" and return to him the knowledge about the
vending machine that Defendants have allegedly gained from
Guddee. In the telephone conference held on October 10, 2007,

---

[1] Defendants have also directed the court's attention to
their Second Supplemental Reply, to which they attached an
assignment agreement, dated July 16, 2003, from Glen Ward to
Abudanza. Ex. C (attached to Second Supplemental Reply) at 4.
The agreement assigns Ward's rights to the pizza vending machine
to Abudanza. The court notes that an assignment of rights from
Ward to Abudanza does not necessarily indicate that Guddee never
had any rights associated with the machine. Moreover, Defendants
first raise this argument in their Second Supplemental Reply, to
which Guddee had no opportunity to respond in writing. See Local
Rule 7.4 ("Any arguments raised for the first time in the reply
shall be disregarded."). The court does not rely on this
assignment.

19

Guddee said he is seeking ownership of intellectual property rights associated with the pizza vending machine, which includes the ability to make and sell the machines.  <u>See</u> <u>also</u> Opp'n at 9-10 ("Should the Court rescind the Agreement based on this admitted failure of consideration, the release contained in it (along with all other provisions) would be void.").  Such a remedy does not require that Defendants physically "unlearn what they have learned."

"The result of rescission is to return both parties to the status quo ante, <u>i.e.</u>, each side is to be restored to the property and legal attributes that it enjoyed before the contract was entered and performed."  <u>Exotics Hawaii-Kona, Inc.</u>, 2007 WL 4127030 at *7 (citing <u>Ambassador Hotel Co. v. Wei-Chaun Inv.</u>, 189 F.3d 1017, 1031 (9th Cir. 1999)).

In the Agreement, Guddee assigned any rights he had in the pizza vending machine and released any materials he had relating to the machine to Defendants.  Agreement at 1.  Guddee's claim for rescission can thus be construed as a request to restore the "legal attributes" that the parties enjoyed prior to entering into the Agreement.  A restoration of legal rights would allegedly allow Guddee to market and sell the machine and would not require Defendants to return to Guddee the "know-how" furnished to Defendants.

To the extent Defendants are arguing that rescission would not return to Guddee any intellectual property rights because Guddee has not demonstrated that he ever owned any such rights, the court declines to address this argument. Procedurally, Defendants' argument has not been timely raised, as it was not raised in the Motion. Guddee, therefore, was not afforded a fair opportunity to respond. As stated previously, this court also has concerns about construing the 2003 agreement, which contains an arbitration clause.

Defendants' argument that Guddee's claim for rescission fails because of "lack of remedy" is unavailing, and the Motion is denied to the extent it relies on this argument.

B.    Guddee May Sue for Misappropriation of Trade Secrets.

Defendants argue that the Second Claim for Relief, Guddee's claim under chapter 482B of Hawaii Revised Statutes for misappropriation of trade secrets, is precluded by the Agreement, which is "favored in the law." Motion at 12-13. This court has already determined that the Agreement does not bar Guddee's claim for rescission. If rescission is available, then the assignment of rights and release from liability will not apply. Guddee may thus bring a claim for misappropriation of trade secrets.

C.   Guddee States A Claim for Tortious Interference
     With Prospective Business Advantage.

Guddee's Third Claim for Relief asserts tortious
interference with prospective business advantage.  In the FAC,
Guddee alleges that he enjoyed prospective business relationships
with attendees at the National Automatic Merchandising
Association ("NAMA") Conference held in Washington, D.C., from
October 15 to 18, 2003.  FAC ¶¶ 10-11, 31.  Guddee further
alleges that Defendants knew of these prospective business
relationships and intentionally interfered with these
relationships by "fraudulently inducing" Guddee to give up all
rights to the machine.  Id. ¶¶ 32-33.

The tort of tortious interference with prospective
business advantage has the following elements:

> (1) the existence of a valid business
> relationship or a prospective advantage or
> expectancy sufficiently definite, specific,
> and capable of acceptance in the sense that
> there is a reasonable probability of it
> maturing into a future economic benefit to
> the plaintiff; (2) knowledge of the
> relationship, advantage, or expectancy by the
> defendant; (3) a purposeful intent to
> interfere with the relationship, advantage,
> or expectancy; (4) legal causation between
> the act of interference and the impairment of
> the relationship, advantage, or expectancy;
> and (5) actual damages.

Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co., 91
Haw. 224, 258, 982 P.2d 853, 887 (Haw. 1999) (emphasis and
footnote omitted).

In <u>Hawaii Med. Ass'n. v. Hawaii Med. Serv. Ass'n, Inc.</u>, 113 Haw. 77, 148 P.3d 1179 (Haw. 2006), the Hawaii Supreme Court addressed the elements necessary for surviving a motion to dismiss a claim for tortious interference with prospective business advantage.  The court noted that plaintiffs "are not required to specifically identify (<u>i.e.</u>, name) the third party with whom they have a business expectancy in order to satisfy pleading requirements."  <u>Id.</u> at 118, 1220.  The court found it sufficient that the plaintiffs alleged intent to interfere and listed specific acts that the plaintiff said established intent.  <u>See</u> <u>id.</u>  The Hawaii Supreme Court noted, however, that greater detail and specificity would be required at the summary motion stage.

Defendants' Motion, even though including a reference to summary judgment in its title, is a motion to dismiss with respect to Guddee's tortious interference claim.  In their memorandum in support of their Motion, Defendants argue that Guddee fails to allege that he had prospective relationships with third parties or that Defendants acted with purposeful intent to interfere with these business opportunities.  Motion at 14-15.  Specifically, Defendants claim that the only potential relationships were with Defendants' own representatives,[2] and

---

[2] At the hearing, Defendants once again relied on the 2003 agreement as evidence that Guddee could not have had any prospective business relationships--independent of Abudanza--

23

that Guddee pursued the Agreement with Defendants, allegedly demonstrating that Defendants did not have the requisite intent to interfere with Guddee's prospective business relationships. See id.

Guddee responds that "there was a potential market for the machine and a defined group of interested parties" and that Guddee's pursuit of the Agreement "in no way defeats his claim." Opp'n at 10-11.

Although Guddee's FAC does not specify the third parties with which Guddee allegedly had prospective relationships, he suggests that there was a defined group of interested parties, as the result of demonstrating the machine at two separate trade shows. See Opp'n at 10. Assuming that the interested parties were participants at the trade show, there is no evidence that all such parties were limited to Abudanza's own representatives. Further, Guddee's pursuit of the Agreement with Defendants does not establish that Defendants lacked the intent to interfere with Guddee's prospective relationships. Indeed, the FAC alleges that Defendants "fraudulently induced" Guddee into relinquishing all rights. The allegations, construed in the light most favorable to Guddee, are sufficient to survive a motion to dismiss.

---

because Guddee was bound by the noncompete language in that agreement. The court declines to rely on the 2003 agreement, for the aforementioned reasons.

Guddee will ultimately be required to come forward with evidence supporting his claims, which may include "particular third parties with whom [he] had a reasonable expectancy of entering into business." Id. at n.35 (quoting Celex Group, Inc. v. Executive Gallery, Inc., 877 F. Supp. 114, 1125 (N.D. Ill. 1995)).  However, Guddee cannot be faulted for having failed to present such evidence in response to a motion that, its title notwithstanding, contended only that there were pleading defects in the Third Claim for Relief.

### D.   Unfair Competition.

Defendants move to dismiss Guddee's claim under Haw. Rev. Stat. § 480-13(b)(2), arguing that the statute is inapplicable to Guddee, as it creates a private right of action only for consumers.  Motion at 16.  Defendants also argue that the Agreement bars this claim.

Section 480-2 has more than one prong.  Guddee's claim under section 480-2(a) is for unfair competition, as clearly stated in the Fourth Claim for Relief.  A claimant under that prong ruled need not be a consumer, as the consumer requirement applies only to the unfair and deceptive practices prong of the statute.  See, e.g., Paulson, Inc. v. Bromar, Inc., 775 F. Supp. 1329, 1338 (D. Haw. 1991) ("In 1987, standing to sue under the 'deceptive practices' clause [of Section 480-2(a)] was limited to 'consumer[s], the attorney general or the director of the office

25

of consumer protection.'   No analogous limitation was placed on standing to sue under the 'unfair competition' clause.") (quoting Haw. Rev. Stat. § 480-2(d)) (alteration in original); <u>see</u> <u>also</u> <u>Lui Ciro, Inc. v. Ciro, Inc.</u>, 895 F. Supp. 1365, 1388 (D. Haw. 1995).

The court's previous determination that the Agreement does not bar Guddee's claim for rescission is also applicable to Guddee's claim for unfair competition.

V.          <u>CONCLUSION.</u>

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 12, 2007.



 /s/ Susan Oki Mollway 
Susan Oki Mollway
United States District Judge

<u>Guddee v. Abudanza, et al.</u>, Civ. No. 06-00664 SOM/KSC; ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.